IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PUTIANSHI LICHENGQU ZHENGCHANGPAI E-COMMERCE CO., LTD., <br><br>  Plaintiff, <br><br> v. <br><br> SHUANGFENG COUNTY SHUANGWEI ELECTRONIC TECHNOLOGY CO., LTD., <br><br>  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 23 C 2650 <br><br> Judge Jorge Alonso |

## MEMORANDUM OPINION AND ORDER

In this patent infringement case, Defendant has moved for dismissal as a sanction for Plaintiff's perjury in its Federal Rule of Civil Procedure 30(b)(6) deposition. The magistrate judge supervising discovery has recommended granting the motion. For the following reasons, the Court agrees with the magistrate judge, adopts his report and recommendation, and dismisses this case.

### I. Background and Procedural History

In this patent infringement case, Plaintiff, Putianshi Lichengqu Zhengchangpai E-Commerce Co., Ltd., seeks a declaratory judgment of invalidity and non-infringement of United States Design Patent No. D959,896 ("the '896 Patent"), which is held by Defendant, Shuangfeng County Shuangwei Electronic Technology Co., Ltd. Defendant has counterclaimed for patent infringement.

The events that led to the filing of this case began in March 2023, when Plaintiff began to sell tumblers via an Amazon e-store. The following month, Defendant filed internal complaints with Amazon, alleging that Plaintiff's tumblers infringed the '896 Patent, which discloses "an ornamental design for a silicon sleeve bamboo lid." (Compl. ¶ 8, ECF No. 1.) Via the internal complaints, Defendant asked Amazon to delist Plaintiff's products, and Amazon complied. Plaintiff responded by filing this suit, contending that the '896 Patent is invalid as anticipated by prior art, *see* 35 U.S.C. § 102(a)(1), *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1238, 1240-41 (Fed. Cir. 2009), and that Plaintiff is therefore not liable for patent infringement.

During a deposition of Plaintiff's designated representative under Federal Rule of Civil Procedure 30(b)(6), Defendant showed the deponent nine screenshot exhibits consisting of certain

Amazon listings through which Plaintiff's Amazon store, known as "Tumble Cup," had sold tumblers with the accused lids. Defendant explained to the deponent that it held a design patent for a lid, and it asked whether the products depicted in the listings were sold with lids as shown. The deponent confirmed that these tumblers did come with lids and that these were fair and accurate representations of certain of Plaintiff's store's Amazon listings. Defendant showed the deponent that he had propounded requests for production of sales data for any products incorporating silicone sleeve bamboo lids, and defense counsel asked if "the prior listings we talked about showed silicone sleeves and bamboo lids." (Pl.'s R. 30(b)(6) Dep. Tr. at 41:21-42:20, ECF No. 97-1.) The deponent answered that they did. (*Id.* at 42:21-43:12.) Then, after a short discussion about Amazon sales reports, the following exchange ensued:

> Q: The cups with the lids that we looked at today, is your company still selling that product into the United States as of today?
> INTERPRETER: I'm sorry, could you repeat the question, please?
> Q: Yes. The product that we talked about being sold by Tumble Cup on Amazon, is your company still selling that product into the United States as of today?
> INTERPRETER: You mean any of those products, right?
> Q: Any of those products, whether through Amazon or not?
> A: Okay. No, no.
> Q: Has your company sold the lid that we talked about today through any other website other than Amazon?
> A: No.
> Q: When did your store stop selling this lid that we talked about today?
> A: I don't remember the exact time.

(*Id.* at 46:2-22.)

After the deposition, Defendant's counsel avers, he visited Plaintiff's Amazon store and found several active listings (*see* ECF Nos. 82-12–82-18) of tumblers with lids that were identical to those in the listings he had shown the deponent during the deposition as Exhibits 9 and 10 (ECF Nos. 82-4, 82-5). Shortly afterward, Defendant filed the present motion for sanctions, claiming that Plaintiff's Rule 30(b)(6) representative had perjured himself by falsely claiming to have discontinued sales of all accused lids. He asks the Court to dismiss Plaintiff's claims and enter default judgment against Plaintiff on Defendant's counterclaim.

The magistrate judge supervising discovery in this case set a briefing schedule on the motion for sanctions. Plaintiff responded by arguing that its deponent had not lied under oath but misunderstood the question: most of the lids he had been shown (ECF Nos. 82-3, 82-6–82-11) had flat tops and no logo, but the bamboo lids in Deposition Exhibits 9 and 10, like the ones in the products that were still on sale through the Tumble Cup store, had rounded, raised outer edges and were inscribed with a "Hydraful" logo. Plaintiff argued that the deponent had believed Defendant was asking him about the flat lids, not the lids with the rounded, raised edges. Supporting this inference, Plaintiff argued, was the fact that the lids with the rounded, raised edges were covered by a different design patent, United States Design Patent No. D1,031,366, held by an entity from whom Plaintiff bought tumblers. And even if the deponent lied, according to Plaintiff, the lie was not material because the lids with the rounded, raised edges were arguably not infringing, given that they were the subject of a different design patent, which, like all patents, is presumed valid.

After holding an evidentiary hearing, the magistrate judge issued a report and recommendation in which he recommended granting the motion for sanctions and dismissing this case. He pointed out that the deponent did not testify at the evidentiary hearing, and Plaintiff did not submit an affidavit or any other evidentiary support for its position; Plaintiff simply argued that the record did not support any inference of intent to lie about a material issue. But what the record really did not support, the judge explained, was any assumption that the deponent believed that he was only being asked about lids with flat tops. Neither Defendant nor the deponent had made any distinction between the lids with flat tops and the lids with rounded, raised edges to that point in the deposition, or indeed so much as remarked upon the difference. The parties discussed silicone sleeve bamboo lids; they did not distinguish between different types of silicone sleeve bamboo lids. And "the interpreter's question – "You mean any of those products, right? – seem[ed] to preclude the distinction" that Plaintiff was attempting to make between the flat lids and lids with rounded, raised edges. (R. & R. at 3, ECF No. 105.) Therefore, the magistrate judge concluded, the record did not support the theory that there was a simple misunderstanding. Further, the magistrate judge explained, the lie was material because Defendant had not conceded that the lids with the rounded, raised edges did not infringe its patent, so the deponent's misstatement could have affected the Court's decision as to infringing sales and the damages Defendant could obtain for them.

Plaintiff filed timely objections to the report and recommendation, which are now fully briefed and ripe for decision.

## II. Legal Standards

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any contested matter." *Kanter v. C.I.R.,* 590 F.3d 410, 416 (7th Cir. 2009) (quoting 28 U.S.C. § 636(b)). The Seventh Circuit has explained the standard as follows:

> De novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive

> weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank,* 725 F.3d 651, 661 (7th Cir. 2013) (citing *United States v. Raddatz,* 447 U.S. 667, 676 (1980)). The district judge makes the ultimate decision to adopt, reject, or modify the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009). The district judge may also decide to "receive further evidence" or "return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991)). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Id.* "The severity of a sanction should be proportional to the gravity of the offense." *Jackson v. Murphy*, 468 F. App'x 616, 619 (7th Cir. 2012). "As a fraud on the court, perjury may warrant the sanction of dismissal." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008); *see Goodvine v. Carr*, 761 F. App'x 598, 601 (7th Cir. 2019) ("[W]e conclude that the district court properly dismissed the cases after determining that Goodvine had deliberately defrauded the court. Courts have 'sound discretion' to dismiss suits with prejudice as a reasonable sanction for falsifying evidence, which 'undermines the most basic foundations of our judicial system.'") (quoting *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015)). "In deciding what measure of sanctions to impose, the district court should consider 'the egregiousness of the conduct in question in relation to all aspects of the judicial process.'" *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) (quoting *Barnhill v. United States*, 11 F.3d 1360, 1367-68 (7th Cir. 1993)).

### III. Discussion

Plaintiff objects to two aspects of the magistrate judge's report and recommendation. First, Plaintiff contests the conclusion that its Rule 30(b)(6) representative committed perjury. Second, even assuming the deponent perjured himself, Plaintiff contests the magistrate judge's conclusion that dismissal is an appropriate sanction under the circumstances.

### A. The Rule 30(b)(6) Deponent Committed Perjury

"[P]erjury is defined as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Montano*, 535 F.3d at 564 (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)); *see Alexander v. Caraustar Indus., Inc.*, 930 F. Supp. 2d 947, 950 (N.D. Ill. 2013). Plaintiff contends that the record, properly interpreted, does not support the inference that the deponent lied; rather,

4

defense counsel's questions were vague enough to support a reasonable inference that the deponent was merely confused. Further, Plaintiff submits an affidavit from the deponent in which he avers that he was mistaken in his deposition testimony, not intentionally deceitful. Additionally, Plaintiff contends that, even if the deponent gave willfully false testimony, it was not perjury because the testimony was immaterial.

### 1. The Deponent's Testimony Was Willfully False

As before the magistrate judge, Plaintiff suggests that, when the deponent was asked about Plaintiff's current sales, he believed that the question referred only to sales of flat-topped lids, not lids with rounded, raised edges. Like the magistrate judge, this Court finds nothing in the deposition transcript or elsewhere in the record to support any reasonable inference that the deponent must have thought that defense counsel was asking only about flat-topped lids, rather than all of the lids he had been shown during the deposition. Based on the interpreter's clarification, the question was explicitly about all of the products the parties had discussed during the deposition, and no distinction between the flat-topped lids and the lids with rounded, raised edges was made by any party at any point in the deposition. The Court agrees with the magistrate judge that, if this distinction is likely to have been important to the deponent, then it falls to Plaintiff to demonstrate it by way of evidence. As the magistrate judge stated, Plaintiff made no effort to do so.

In an attempt to correct this deficiency, Plaintiff has now attached to his objections an affidavit from the deponent, which he asks the Court to consider, even though he proffered neither this affidavit nor any other evidence to the magistrate judge during the initial briefing of the motion for sanctions. This evidence should have been submitted months ago, along with Plaintiff's initial response to the motion for sanctions. *See El-Barbarawi v. Home Depot U.S.A., Inc.*, No. 19 C 2520, 2021 WL 4338958, at *4-6 (N.D. Ill. June 23, 2021) (explaining that it is "too late to inject new evidence into [the] case" in objections to a report and recommendation, as it "defeat[s] the purpose of referring a matter to the magistrate judge").

Nevertheless, the Court will consider the affidavit. It is of no help to Plaintiff, however, because it does not support his theory; indeed, it comes closer to contradicting it. Bizarrely, the affidavit offers a different explanation for the deponent's false testimony than any Plaintiff made in its briefs: the deponent avers that he "was not aware that due to the e-commerce platform's return process, certain items that had previously been removed may be automatically reactivated and put back on the shelves," and this had "occurred without [his] knowledge." (Decl. of Jianshan Xu, ECF No. 110-1.) So, the explanation in the affidavit, which Plaintiff does not address in its briefs, is that the deponent was confused about which lids were on sale, not which lids defense counsel was asking about. Plaintiff's "shifting and vacillating explanations for [its] conduct" tend to support rather than undermine the magistrate judge's conclusion that Plaintiff's representative committed perjury. *Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 933 (N.D. Ill. 2007) (citing *NLRB v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1268 (7th Cir. 1987)); *see also In re Brahos*, 589 B.R. 381, 387 (Bankr. N.D. Ill. 2018) (reasoning that "shifting and contradictory statements made [the parties'] explanations . . . incredible").

Even more bizarre is that Plaintiff makes other arguments, which were apparently not made before the magistrate judge, about how the deponent might have reasonably interpreted defense counsel's question as referring to other lids or listings. Plaintiff argues that the deponent likely did not notice that the lids depicted in Deposition Exhibits 9 and 10 had rounded, raised edges because they were shown from a side view, or, alternatively, he may have believed that defense counsel was asking only about the specific listings they had discussed during the earlier questioning, not all products similar to those depicted in those listings. Plaintiff's approach strikes the Court as misguided. Arguments about what the deponent *might* reasonably have understood or meant are of little use now, after he has had an opportunity to explain himself, and these are not the explanations he gave. The Court can hardly consider attorney argument about what the deponent might have thought or understood about defense counsel's questions to be more probative than the deponent's own sworn statement about the same. These "shifting and vacillating" explanations only do more damage to Plaintiff's credibility and the credibility of its deponent.

Even if the Court were inclined to consider these other arguments as if the deponent had made them himself, and even if the Court were to put aside that they are suspect because they are "shifting and vacillating," it still would not find them persuasive or credible. First, Plaintiff's suggestion that the deponent did not notice that the lids in Deposition Exhibits 9 and 10 had rounded, raised edges because an image in each of these exhibits shows the lids from the side is based on a faulty premise. It is true that some of the images in Deposition Exhibits 9 and 10 show the lid from the side, which makes it difficult to tell that the pictured lid has rounded, raised edges, and impossible to tell that it is inscribed with the "Hydraful" logo. (*See* ECF No. 82-4 at 1; ECF No. 82-5 at 1). But there are other images included in these exhibits that show the lid from a top view, and these images plainly reveal that the lid has rounded, raised edges and a "Hydraful" logo. (*See* ECF No. 82-4 at 5; ECF No. 82-5 at 5.) Defense counsel specifically asked the deponent to review each exhibit and confirm when he had finished reviewing it; the deponent verbally confirmed that he complied with these requests, stating in reference to each of these exhibits, "I'm done reviewing it." (Pl.'s R. 30(b)(6) Dep. 21:8, 22:23.) There is, therefore, no basis in the transcript to conclude that the deponent had not properly seen the lid he was testifying about. And, given that he was testifying as Plaintiff's Rule 30(b)(6) representative, the Court assumes that he was sufficiently familiar with Plaintiff's products to know one lid from one another.

As for Plaintiff's suggestion that the deponent was confused about whether defense counsel's question encompassed all products that incorporated the lids they had been discussing, rather than only the particular listings he had been shown, this explanation is not borne out by the transcript, either. True, there is at least some superficial textual support for it, to the extent that defense counsel asked about the "product" or "products," and the term "product" is vague enough that it could have meant the lid, the tumbler, or the combination of the two sold as one item. But even if counsel's use of the term "product" was vague, the next question and answer were unmistakable:

> Q: When did your store stop selling this lid that we talked about today?
> A: I don't remember the exact time.

6

(Pl.'s R. 30(b)(6) Dep. Tr. at 46:20-22) Based on this exchange, it is clear that counsel was asking about lids. And indeed, it must have been clear from the broader context in which these questions were asked. The deposition focused on lids: defense counsel informed the deponent that Defendant owns a design patent for a lid, and he repeatedly asked about the lids in each listing he showed the deponent. The term "lid" or "lids" appears dozens of times in the transcript. The deponent must have understood that he was being asked about whether Plaintiff was still selling the lids that he had been shown during the deposition, even if they were being sold with different tumblers through different listings, and he answered the questions falsely. This is the most likely interpretation of the relevant exchange, in the absence of any evidence convincingly contradicting it—and, again, Plaintiff has not provided any such evidence, given the dubious value of the deponent's affidavit.

For all these reasons, the Court agrees with the magistrate judge that Plaintiff's Rule 30(b)(6) representative's testimony was willfully false.

### 2. The False Testimony Was Material

"A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Grigsby*, 692 F.3d 778, 785 (7th Cir. 2012) (cleaned up). The magistrate judge concluded that the false testimony was material, despite Plaintiff's contention that it pertained only to noninfringing lids, because whether "the sales of the rounded-edge lids . . . infringe the '896 Patent . . . is an ultimate issue to be decided in this case, not a declaration to be made by [P]laintiff." (R. & R. at 4.) Plaintiff contends that the magistrate judge erred because the sales of the lids with the rounded, raised edges could only increase the damages available to Defendant *if* Defendant prevailed on the antecedent issues of invalidity and infringement, and they did not have a tendency to influence the decision on those antecedent issues, on which Plaintiff's liability would depend. The Court fails to see why the fact that the Court might never have reached the issue of damages makes the testimony immaterial. It is always true that a claimant might fail to establish liability, obviating any need to assess damages. Litigants may not lie with impunity about damages issues merely because the Court might not reach them. *See Alexander*, 930 F. Supp. 2d at 952, 954, 959.

The Court concludes that Plaintiff's representative's testimony during the Rule 30(b)(6) deposition meets the definition of perjury because he willfully made false statements as to a material issue.

### B. Dismissal Is the Appropriate Sanction

Plaintiff contends that, even if the deponent committed perjury, the perjury was not so serious as to support the severe sanctions of dismissal and default judgment because Plaintiff did not abuse the judicial process and its litigation conduct did not evince a pattern of abuse or evasiveness. *Id.* at 958 ("[T]he severity of any sanction must be proportioned to the gravity of the offense, and while a serious offense, perjury will not automatically result in dismissal if, in the particular setting of the case, it would be excessive.") (citing *Allen v. Chicago Transit Auth.*, 317

F.3d 696, 703 (7th Cir. 2003)). Plaintiff makes two arguments: (1) nothing in Plaintiff's prior conduct during the discovery process supports any conclusion that Plaintiff "abuse[d] the judicial process," *Alexander*, 930 F. Supp. 2d at 949 (citing *Chambers*, 501 U.S. at 44-45), and (2) the perjury was not sufficiently harmful to warrant the draconian sanction of dismissal.

      The Court need not address the first argument in any detail because it views that issue as something of a red herring. True, Defendant argued in its motion for sanctions that Plaintiff's prior litigation conduct—namely, its evasiveness in scheduling the Rule 30(b)(6) deposition and in responding to requests for production—provided support for severe sanctions such as dismissal. And the magistrate judge briefly cited that portion of Defendant's motion in the report and recommendation. But to the extent that Plaintiff contends that its prior litigation conduct was a major factor in the magistrate judge's decision, the Court reads the decision differently. What drove the magistrate judge's recommendation, as he explained, is that the conduct of the deposition and the context of the false testimony within it indicated that the deponent's perjury was willful and material to a degree that warranted dismissal as a serious abuse of process, and Plaintiff had not deigned to submit any evidence to show the testimony in a different light. The recommendation turned—and this Court's decision turns—on Plaintiff's second argument, as to whether the perjury was sufficiently harmful to warrant dismissal.

      The Court might consider this at least a borderline case if Plaintiff's explanation of its representative's false responses during the Rule 30(b)(6) deposition was coherent and consistent throughout both rounds of briefing related to the motion for sanctions. Instead, as the Court has explained, Plaintiff's explanations have "shift[ed] and vacillat[ed]." *Mullins*, 511 F. Supp. 2d at 933; *see Brahos*, 589 B.R. at 387. First, Plaintiff argued that the deponent was confused about which lids defense counsel was referring to, and now it argues variously that the deponent was confused about (1) which lids defense counsel was referring to, (2) which lids it was selling at the time, and (3) whether counsel was referring to listings rather than lids. Having now had an opportunity to explain why the deponent gave false testimony under oath, Plaintiff offers not one explanation but three. Far from rehabilitating Plaintiff's or its representative's credibility, this damages it further and, indeed, practically compounds the perjury.

      Plaintiff's representative lied to reduce Plaintiff's exposure to damages, and such perjury is intolerable. "This conduct is egregious—'[f]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system.'" *Rosa v. Bd. of Trs. of Univ. of Illinois*, No. 18 CV 8477, 2024 WL 4800764, at *8 (N.D. Ill. Oct. 9, 2024) (quoting *Secrease*, 800 F.3d at 402). "'If it were otherwise—if it were the way the [Plaintiff] want[s] it to be—litigants could lie about claims to the point of getting caught, then withdraw those claims with impunity." *Alexander*, 930 F. Supp. 2d at 957. "[N]o litigant should ever feel free to risk committing perjury with the hope that, even if the lies are exposed, the rest of the case will progress unhindered." *Say It Visually, Inc. v. Real Est. Educ. Co., Inc.*, No. 23 CV 3424, 2025 WL 933951, at *15 (N.D. Ill. Mar. 27, 2025). Plaintiff correctly notes that the perjury was quickly and easily discovered, so this case is unlike those in which the perjury prolonged an action past the point at which it should have been resolved—and this is a factor that this Court takes into consideration. But it leaves the Court unmoved. Although the damages issue relates to Defendant's counterclaim, it was Plaintiff who

filed this action, and a plaintiff should not be "seeking relief based on information that the plaintiff knows is false." *Secrease*, 800 F.3d at 401; *see also Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022) ("[W]e have held that a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." (internal quotation marks omitted)). Any leniency the Court might have been inclined to afford is ultimately inappropriate in light of Plaintiff's continued dissembling in the present round of briefing, which tends to confirm the magistrate judge's assessment that Plaintiff is abusing the judicial process.

A severe sanction is plainly warranted here to deter other litigants from the same misconduct. The only remaining question is whether a sanction less severe than dismissal of the action would serve as well. *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) ("The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations, when there is a clear record of delay or contumacious conduct, *or when other less drastic sanctions have proven unavailable*.") (internal quotation marks omitted) (emphasis added)). The Court has considered lesser sanctions, but none seems workable. In other cases where the perjury does not touch every claim, courts might be able to dismiss or default the affected claims while allowing others to proceed, but the Court could hardly grant default judgment on Defendant's infringement counterclaim while allowing Plaintiff to continue litigating the antecedent invalidity issue. Obviously, there can be no liability for infringement of an invalid patent; indeed, this appears to be the entire basis for Plaintiff's claim in Count II of its complaint, as to non-infringement. (*See* Compl. ¶¶ 27-29). If the Court were to order, for example, that Plaintiff is prohibited from opposing the counterclaim, *see Quela v. Payco-Gen. Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000), Fed. R. Civ. P. 37(b)(2)(A)(ii), while the parties continue to litigate the invalidity issue, the sanction would not go far enough beyond simply "put[ting] the parties in the positions they were in before" the perjury occurred, to the extent that it would preserve the possibility that Plaintiff could prevail on the invalidity issue and therefore on all claims, with the infringement issue becoming moot. *Rosa*, 2024 WL 4800764, at *8. The Court could impose monetary sanctions, but again, this would preserve the possibility that Plaintiff might still obtain complete relief in this suit by prevailing on the invalidity issue. True, that relief might come at a somewhat higher price, but the Court fears that merely raising the price of the declaratory relief Plaintiff seeks would not have a sufficiently powerful deterrent effect. It might still be "well worth it to pursue a pattern of perjury because there would no risk" that outweighs the benefits, "so long as the perjurer abandoned the claims intended to be supported by the perjurious testimony." *Alexander*, 930 F. Supp. 2d at 957. Under that "perverse view, the integrity of the judicial system can [be] compromised with the wrongdoer suffering no effective sanction." *Id.*; *see Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205, 2015 WL 2371597, at *37 (S.D. Ind. May 18, 2015) ("[S]uch a sanction would send a message that the Court is willing to accept perjury so long as parties are willing to write a check. This the Court will not do."). Put simply, the Court is convinced that Plaintiff should not be able to continue to seek relief from this Court, having committed perjury in these proceedings through its Rule 30(b)(6) representative. *Say It Visually*, 2025 WL 933951, at *16 ("Perjury . . . is fraud on the Court, and under the right circumstances, 'a litigant who defrauds the court should not be permitted to continue to press his case.'" (quoting *Allen*, 317 F.3d at 703)).

The Court concludes, therefore, that dismissal of Plaintiff's declaratory claims is an appropriate sanction. However, Defendant also seeks default judgment on its counterclaim (*see* Mot. for Sanctions at 14, ECF No. 82; Def.'s Resp. Br. at 6, ECF No. 115), which is less straightforward. Defendant's motion includes no request for damages, does not specify what relief the judgment should afford, and proffers no evidence on which the Court could base a damages award or other remedial order.

Courts must impose sanctions that are "proportionate to the circumstances," and [c]onsiderations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and *the weakness of the case*." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (emphasis added). The Court has little information on which it might base any conclusion as to the strength or "weakness of the case," *id.*, and it is hesitant to impose sanctions that might, for all the Court can tell, hand Defendant a windfall by transforming what might be a weak case into an unlikely victory. *See FTC v. Asia Pac. Telecom, Inc.*, 788 F. Supp. 2d 779, 791 (N.D. Ill. 2011) (declining to award default judgment as a sanction, although the defendant's misconduct was "on par with behavior that has earned other litigants default judgment or dismissal," because such sanctions were not "workable . . . given the . . . uncertainty over the appropriate scope of damages or other relief").

The thrust of the Court's decision is that, having committed perjury and then, after it was found out, all but doubled down on it, Plaintiff should no longer be permitted "to press [its] case." *Allen*, 317 F.3d at 703. Plaintiff filed this case seeking a declaration that Defendant's patent is invalid and therefore that Plaintiff was not liable for infringement. The Court understands Defendant to be requesting essentially for the suit to end with Plaintiff having failed to obtain any relief and Defendant's exclusive rights under the '896 Patent preserved. Resolving the matter in this way imposes a sanction that is appropriately tailored to the circumstances of this case. It will have a powerful deterrent effect by demonstrating that litigants should not expect to be able to "continue to press [their] case" after committing perjury, *Allen*, 317 F.3d at 703, without doubly punishing Plaintiff by requiring it to pay damages or imposing relief that may go far beyond what Defendant could have obtained if the suit had proceeded. The Court is concerned that awarding affirmative relief to Defendant without evidence and argument demonstrating that Defendant is substantively entitled to it could have unfair ripple effects in other cases for other litigants selling similar products. In order to keep the sanction proportionate with the misconduct, the Court will not enter default judgment on the counterclaim; instead, it will dismiss that claim without prejudice.

## CONCLUSION

The magistrate judge's report and recommendation [105] is adopted, Plaintiff's objections [115] are overruled, and Defendant's motion for sanctions [81] is granted. Plaintiff's claims are dismissed with prejudice, and Defendant's counterclaim is dismissed without prejudice. Judgment shall enter. Civil case terminated.

**SO ORDERED.**  **ENTERED: September 19, 2025**

_____
**JORGE L. ALONSO**
**United States District Judge**